IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**OSCAR A. VILLARREAL,**

    Plaintiff,

v.                                                                                                    Civil Action No. **3:19CV447**

**LEON DIXON, M.D.,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Oscar A. Villarreal, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Villarreal's Particularized Complaint ("Complaint," ECF No. 10), wherein he raises the following four claims for relief:[2]

| | |
|---|---|
| Claim One: | Warden Call negligently failed to ensure that "safety mats" were in the showers in violation of the Fourteenth Amendment.[3] (*Id.* at 4, 6.) |
| Claim Two: | Warden Call was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment.[4] (*Id.* at 4, 6–7.) |

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

    Claim Three:  Dr. Dixon was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment. (*Id.* at 4, 7.)

    Claim Four:  OrthoVirginia was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment. (*Id.* at 4, 8.)

The matter is before the Court on Defendants Warden Call and Dr. Dixon's Motion for Summary Judgment as to Claims One, Two, and Three. (ECF No. 26.) Villarreal filed a response to the Motion for Summary Judgment. (ECF No. 31.) For the reasons stated below, the Motion for Summary Judgment will be GRANTED because Villarreal failed to exhaust his administrative remedies. Because OrthoVirginia has filed a separate Motion for Summary Judgment as to Claim Four, the Court will address that claim in a separate opinion.

## I. Summary Judgment Standard

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). "A fact is material if the existence or non-existence thereof could lead a jury to different resolutions of the case." *Thomas v. FTS USA, LLC*, No. 3:13cv825, 2016 WL3653878, *4 (E.D. Va. June 30, 2016) (citing *Liberty Lobby*, 477 U.S. at 248). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322–24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 255. Whether an inference is

2

reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323–24). The ultimate inquiry in examining a motion for summary judgment is whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).

## II. Evidence Presented

Defendants ask the Court to dismiss Claims One, Two, and Three because Villarreal failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

In support of their Motion for Summary Judgment, Defendants submit: (1) an affidavit from A. Jackson, a Human Rights Advocate at the Nottoway Correctional Center ("NCC") ("Jackson Affidavit," ECF No. 27–1, at 1–7); (2) a copy of Operating Procedure 866.1, Offender Grievance Procedure (ECF No. 27–1, at 8–21); (3) a copy of an informal complaint, dated November 27, 2018 (*id.* at 22); (4) a copy of an informal complaint, dated November 19, 2018 (*id.* at 23–24); (5) a copy of an informal complaint, dated December 19, 2018 (*id.* at 25); (6) a

3

copy of an informal complaint, dated March 21, 2019 (*id.* at 26); and, (7) a copy of a regular grievance, dated April 2, 2019 (*id.* at 27–29).

At this stage, the Court is tasked with assessing whether Villarreal "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324.

The response that Villarreal filed in opposition to the Motion for Summary Judgment is inadequate in this regard. The Court previously warned Villarreal that:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 12, at 2.) Villarreal did not comply with this directive in responding to the Motion for Summary Judgment.

Instead, Villarreal responded by filing a document he called "PLAINTIFF'S TRAVERSE." (ECF. No. 31, at 1–4.) While Villarreal did sign this document, he did not do so "under penalty of perjury." (ECF No. 31, at 4.) Further, Villarreal's "PLAINTIFF'S TRAVERSE" does not include a "*separate document* titled 'Affidavit' or 'Sworn Statement,'" as Villarreal was instructed to do by the Court (ECF No. 12, at 2 (emphasis added)), nor does it include a notary's jurat, or any other indication that it was ever sworn to before a notary public.[5]

---

[5] A document can be notarized in two primary ways. An acknowledgment is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn to the truth of the contents of the document. In an

4

The Court notes that Villarreal did include a separate page labeled "JURAT/SERVICE," in which Villarreal hand wrote:

> Under Penalty of Perjury I assert that the facts stated above are true and correct.
> I further certify that a true and correct copy of this Traverse was placed in the N.C.C. Legal mailbox for mailing this 19 day of March 2020 to:
> Counsel for Defendants [address omitted].

(ECF No. 31, at 5.)

However, Villarreal did not sign this page. (*Id.*) Thus, Villarreal's "Traverse" to the Motion for Summary Judgment fails to constitute admissible evidence.[6] *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

As neither Villarreal's unverified Complaint, nor his response to the Motion for Summary Judgment constitute admissible evidence for purposes of summary judgment, Villarreal has failed to cite to any evidence that he wishes the Court to consider in opposition.

---

acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that jurat uses words "subscribed and sworn" and demonstrates an oath was rendered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009).

[6] Even if the Court were to accept Villarreal's "Traverse" to the Motion for Summary Judgment as a sworn statement, the contents thereof would nevertheless fail to constitute admissible evidence as they are nothing more than generalized, conclusory assertions of liability and bald legal conclusions. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment"). For instance, Villarreal states that he "rejects" the "averments in the Motion for Summary Judgment and attests that [Defendants] are liable for their negligence," without explanation or evidentiary support. (ECF No. 31, at 2.) Villarreal also fails to address the issue of exhaustion of remedies, except to tersely say that he "acted with diligence and in a timely manner," concluding that he "gave Defendant's adequate notice and opportunity to remedy his claim." (*Id.* at 3.) These are precisely the sort of bald legal conclusions that are insufficient to "stave off summary judgment." *Roane*, 378 F.3d at 400–01. Given the generalized and conclusory nature of these statements, Villarreal's submission would fail to create a material dispute of fact in any event. *Id.*

*See* Fed. R. Civ. P. 56(c)(3) (emphasizing that "[t]he court need consider only the cited materials" in deciding a motion for summary judgment). Villarreal's failure to present any evidence to counter the Motion for Summary Judgment permits the Court to rely solely on the Jackson Affidavit and the supporting records in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3) ("The Court need only consider the cited materials . . . .").[7]

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Villarreal.

### III. Relevant Facts

**A.     Grievance Procedure at the Virginia Department of Corrections ("VDOC")**

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints in the VDOC. (Jackson Aff. ¶ 4.) Offenders receive an orientation to the grievance procedure system when they arrive at a VDOC facility. (Operating Procedure § 866.1.IV.A.4.) Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints. (*Id.* § 866.1.V.A.) Generally, a good faith effort requires the inmate to submit an informal complaint form. (*Id.* § 866.1.V.A.1–2.) If the informal resolution

---

[7] The Court notes that Villarreal included copies of an informal complaint, dated March 21, 2019, and a regular grievance, dated April 2, 2019, with his submissions that appear to be identical to documents provided by the Defendants. (ECF No. 31-1, at 1–2.) The Court will consider the version of these documents submitted by Defendants. (ECF No. 27-1, at 26–27.)

effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator." (*Id.* § 866.1.VI.A.2.b.) The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue. (*Id.* § 866.1.VI.A.2.a.) Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally." (*Id.* § 866.1.V.A.3.) A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control. (*Id.* § 866.1.VI.A.1.)

### 1. Grievance Intake Procedure

Prior to reviewing the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*Id.* § 866.1.VI.B.) A grievance meeting the criteria for acceptance is logged in on the day it is received, and a "Grievance Receipt" is issued to the inmate within two days. (*Id.* § 866.1.VI.B.3.) If the grievance does not meet the criteria for acceptance, prison officials complete the "Intake" section of the grievance and return the grievance to the inmate within two working days. (*Id.* § 866.1.VI.B.4.) If the inmate desires a review of the intake decision, he or she must send the grievance form to the Regional Ombudsman within five calendar days of receipt. (*Id.* § 866.1.VI.B.5.)

7

## 2. Grievance Appeals

Up to three levels of review exist for a regular grievance. (*Id.* § 866.1.VI.C.) The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review. (*Id.* § 866.1.VI.C.1.) If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services. (*Id.* § 866.1.VI.C.2.) The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III. (*Id.* § 866.1.VI.C.2.g.)

"Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion . . . ." (Jackson Aff. ¶ 6.)

### B. Facts Pertaining to Villarreal's Exhaustion of Administrative Remedies

On November 19, 2018, Villarreal filed an informal complaint related to an incident that occurred on October 29, 2018, stating in pertinent part that "[m]edical charged me for an injury that wasn't my fault. I exited the shower and a puddle of water was on the floor that I slipped in. I tried to break my fall and hurt my wrist." (ECF No. 27-1, at 23.) Prison officials responded to Villarreal and explained the "co-pay" charges they assessed to him related to the incident. (*Id.*)

On or about that same day, November 19, 2018, a second informal complaint was generated on Villarreal's behalf because "Health Services received an email from [Villarreal's] attorney stating that [Villarreal] did not receive appropriate follow up care for a slip and fall incident," and that Villarreal "needs follow up care with Orthopedics." (*Id.* at 22.) Prison officials responded to Villarreal stating that he had "received appropriate medical care for [his]

8

complaint," explaining that he was "seen by medical staff and referred for further evaluation by an outside provider on 11/16/18." (*Id.*)

On December 19, 2018, Villarreal submitted another informal complaint stating, among other things, that:

> [He was] in . . . pain due to the injury [he] suffered to [his] wrist on 10-29-18. It was x-rayed on 11-2-18, and on 11-18-18, a cast was put on [his] arm. On 12-16-18, [he] was told it wasn't set right and they need to repair it.

(*Id.* at 25.) On December 21, 2018, a nurse responded to Villarreal and informed him that surgery had been scheduled for his wrist and that he had an order for ibuprofen to manage the pain. (*Id.*) Villarreal was told he could sign up for a sick call if he wished "to be seen by medical." (*Id.*)

Three months later, on March 21, 2019, Villarreal submitted another informal complaint alleging that "Dr. Dixon and [another doctor] fail[ed] to get [him] to the hospital in an adequate amount of time (20 days) **10–29–19 [to] 11–16–18**. [His] wrist healed incorrectly. They were negligent . . . ." (*Id.* at 26 (emphasis added).) Villarreal stated that he "want[ed] to get compensation." (*Id.*) A nurse responded to Villarreal and stated that she could not discuss the issue of compensation, but if wanted to discuss his medical issues with a doctor, he could sign up for a sick call. (*Id.*)

On April 2, 2019, Villarreal filed a regular grievance, alleging in relevant part, that "Dr. Dixon and [another doctor] ignored x-rays [his] wrist was fractured and fail[ed] to get [him] to the hospital. 18 days passed, [his] wrist healed incorrectly and had to be broken and screws added to correct [it]." (*Id.* at 27.) Villarreal reiterated his desire for compensation. (*Id.*)

Villarreal's regular grievance was rejected because Villarreal submitted it "well past the 30-day limit." (Jackson Aff. ¶ 16.) A note on the rejected grievance form explains that

9

"[g]rievances are to be filed within 30 calendar days from the date of occurrence/incident, or discovery of the occurrence/incident . . . ." (ECF No. 27-1, at 28.) Next to the note, the responding prison official made a handwritten notation indicating that "10/29–11/16/18" was the relevant date range.[8] (*Id.*) The rejected grievance was subsequently returned to Villarreal. (Jackson Aff. ¶ 16.) There is nothing in Villarreal's grievance file to indicate "that he sent his grievance to the Regional Ombudsman for a review of the intake decision." (*Id.* ¶ 17.)

### IV. Exhaustion Analysis

The Court will grant the Motion for Summary Judgment because Villarreal failed to exhaust his administrative remedies with regard to Claims One, Two, and Three.

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical

---

[8] The Court notes that this is also the date range Villarreal specified in his informal complaint filed on March 21, 2019. (ECF No. 27-1, 26.) These dates correspond with the date the slip-and-fall incident occurred, and the date that Villarreal was "referred for further evaluation by an outside provider." (*See* ECF No. 27-1, at 22–23.)

procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Villarreal failed to exhaust his administrative remedies with regard to Claims One, Two, and Three. The incident occurred on October 29, 2018. (ECF No. 27–1, at 23.) Villarreal was "referred for further evaluation by an outside provider" on November 16, 2018. (ECF No. 27–1, at 22.) Villarreal was clearly aware that his wrist "wasn't set right" on or before December 16, 2018. (ECF No. 27–1, at 25.) Thus, construing the facts in a light most favorable to Villarreal, his claim was known, or at the very least, discoverable as of December 16, 2018. Accordingly, Villarreal had until January 15, 2019, to file his regular grievance. (Operating Procedure § 866.1.VI.A.1.) Nevertheless, Villarreal did not file his regular grievance until April 2, 2019, almost four months after the deadline. (ECF No. 27–1, at 27.) Therefore, Villarreal failed to comply with the thirty–day filing deadline established by the VDOC.

Even if the Court were to assume, *arguendo*, that Villarreal were somehow excused from compliance with this VDOC filing requirement, Villarreal still failed to properly exhaust his administrative remedies. Most notably, Villarreal's regular grievance failed to mention "safety mats," Warden Call, or any factual allegations relating to Claims One or Two. By failing to include the substance of Claims One and Two in his regular grievance, Villarreal deprived the VDOC of any chance to "address the issues" raised by said claims "on the merits." *Woodford*, 548 U.S. at 90 (citation omitted). Moreover, Villarreal did not exhaust his appeals following the denial of his regular grievance. To challenge that determination, Villarreal was required to send

the grievance form to the Regional Ombudsman within five calendar days of receipt. VDOC's records indicate that this was not done. Villarreal has failed to point to any admissible evidence to the contrary. Indeed, rather than challenge the intake determination rejecting his regular grievance, the record before the Court indicates that Villarreal simply proceeded with the current law suit.

In any event, Villarreal failed to comply with the VDOC's procedural rules by failing to timely file his regular grievance, and by failing to exhaust the appeals that were available to him. As such, his complaint could not be addressed on its merits as is required for proper exhaustion. *Woodford*, 548 U.S. at 90 (emphasis in original) (explaining that an inmate must use administrative remedies "*properly* (so that the agency addresses the issues on the merits)."). The record therefore establishes that Villarreal failed to comply with 42 U.S.C. § 1997e(a) and his claims are not properly exhausted.[9] *See Woodford*, 548 U.S. at 90.

As such, Defendants are entitled to summary judgment on Claims One, Two, and Three.[10] Claims Two and Three will be DISMISSED WITHOUT PREJUDICE. *See Duncan v. Clarke*, No. 3:12CV482, 2015 WL 75256, at *9 (E.D. Va. Jan. 6, 2015) (explaining that "the

---

[9] "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted). Villarreal fails to allege, much less prove, that he was prevented from timely pursing an appropriate grievance.

[10] Villarreal's allegations against Warden Call are vague and conclusory, and appear to be based upon Warden Call's position, rather than his actions. "Government officials may not be held liable . . . under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). Rather, the plaintiff must affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (emphasis added) (internal quotation marks omitted). Villarreal's failure to identify precisely how Warden Call was personally involved in the alleged deprivation of his rights constitutes an alternative basis for dismissing both Claims One and Two.

normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice" (citing *Booth*, 532 U.S. at 735)). Claim One, on the other hand, will be DISMISSED WITH PREJUDICE, as it also fails to state a claim.[11]

### V. Conclusion

For the reasons stated above, the Motion for Summary Judgment (ECF No. 26) will be GRANTED with respect to Claims One, Two, and Three. Claim One will be DISMISSED WITH PREJUDICE. Claims Two and Three will be DISMISSED WITHOUT PREJUDICE. With regard to Claims Two and Three, if and when Villarreal properly exhausts his administrative remedies, he may file a new complaint. Claim Four will remain pending before the Court and will be addressed in a separate opinion.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: 3-3-21
Richmond, Virginia

---

[11] In Claim One, Villarreal alleges that his "injuries were . . . a direct result of [Warden] Call's negligence . . . ." (ECF No. 10, at 6.) "Where a government official's act causing injury . . . is merely negligent, 'no procedure for compensation is constitutionally required.'" *Daniels v. Williams*, 474 U.S. 327, 333 (1986) (citation omitted). Thus, it is clear, even if Villarreal had adequately alleged that Warden Call acted personally to violate his rights, Claim One would nevertheless fail, because the deprivation of rights alleged is simply not cognizable in the context of a § 1983 action. *See, e.g.*, 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A (pursuant to the Prison Litigation Reform Act this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted"). Therefore, Claim One will be dismissed with prejudice.