IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OSCAR A. VILLARREAL,

    Plaintiff,

v.                                                                          Civil Action No. **3:19CV447**

LEON DIXON, M.D., *et al.*,

    Defendants.

## MEMORANDUM OPINION

Oscar A. Villarreal, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Villarreal's Particularized Complaint ("Complaint," ECF No. 10), wherein he raised the following claims for relief:[2]

    Claim One:    Warden Call negligently failed to ensure that "safety mats" were in the showers in violation of the Fourteenth Amendment.[3] (*Id.* at 4, 6.)

    Claim Two:    Warden Call was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment.[4] (*Id.* at 4, 6–7.)

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions.

[3] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

Claim Three: Dr. Dixon was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment. (*Id.* at 4, 7.)

Claim Four: (a) OrthoVirginia was deliberately indifferent to Villarreal's broken wrist in violation of the Eighth Amendment. (*Id.* at 4, 8.)
(b) OrthoVirginia acted with negligence in providing medical care for Villarreal's broken wrist. (*Id.*)

By Memorandum Opinion and Order entered on March 3, 2021 the Court dismissed Claims One, Two, and Three because Villarreal failed to exhaust his administrative remedies with respect to the those claims. (ECF Nos. 50, 51.) On April 30, 2021, Villarreal filed a motion requesting to reinstate Claims One, Two, and Three. (ECF No. 52.) Villarreal, however, fails to demonstrate that the prior dismissal of these claims was in error. Accordingly, the Motion to Reinstate (ECF No. 52) will be DENIED.

The matter is before the Court on the Motion for Summary Judgment filed by OrthoVirginia regarding Claims Four (a) and (b).[5] (ECF No. 41.) Although Villarreal was granted an extension of time to respond to the Motion for Summary Judgment, he failed to file a response. For the reasons stated below, the Motion for Summary Judgment will be GRANTED and the action will be DISMISSED.

## I. Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323

---

[5] The Motion for Summary Judgment was accompanied by the appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

2

(1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, OrthoVirginia submitted:
(1) Villarreal's medical records (ECF No. 42–1); (2) a declaration from Robert B. Rawles, M.D., a doctor who is board-certified in Hand Orthopedic Surgery and Orthopedic Surgery by the American Board of Orthopedic Surgery ("Rawles Decl.," ECF No. 42–2); (3) a declaration from

3

John N. Hall, a board-certified orthopedic surgeon ("Hall Dec.," ECF No. 42–3); and, (4) a letter sent to Villareal requesting that Villarreal "provide written affirmation that the necessary certifying expert opinion was obtained" as required by section 8.01–20.1 of the Code of Virginia. (ECF No. 42–4).

Villarreal's failure to present any evidence to counter the Motion for Summary Judgment or file an opposition to the Motion for Summary Judgment permits the Court to rely solely on OrthoVirginia's material submitted in support of its Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537; Fed. R. Civ. P. 56(c)(3).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Villarreal.

## II. Summary of Relevant Facts

### A. Villarreal's Medical Care

On October 29, 2018, while confined at Nottoway Correctional Center ("NCC"), Villarreal fell and broke his wrist. (ECF No. 10, at 4–5.) Villarreal received treatment for his wrist at NCC, including a splint. (ECF No. 42–1, at 4.)

On November 16, 2018, NCC staff transported Villarreal to OrthoVirginia where he was evaluated by Dr. Rawles. (*Id.* at 3–5.) During this visit, Dr. Rawles ordered another x-ray which reflected that Villarreal had a "mildly displaced extra-articular distal radius fracture." (*Id.* at 5.) Dr. Rawles also examined Villarreal's wrist to determine his pain and range of motion. (*Id.* at 4.) Dr. Rawles determined that Villarreal's "best chance of recovery, with minimal risk of complications and excessive discomfort, was through placing him in a cast while continuing to

monitor his distal radius fracture's healing." (Rawles Decl. ¶ 7.) Dr. Rawles placed Villarreal's right wrist in a fiberglass cast and ordered a follow-up visit in four weeks. (ECF No. 42–1, at 5.)

On December 14, 2018, Villarreal returned to OrthoVirginia for his follow-up appointment. (ECF No. 42–1, at 8–10.) Villarreal complained of continuing pain. (*Id.* at 9.) Dr. Rawles ordered additional x-rays which showed "increased tilt of his distal radius fracture." (*Id.* at 10.) Based on an examination of the x-ray and his own training, Dr. Rawles "determined that surgery was appropriate to obtain optimal healing and functionality, while mitigating discomfort." (Rawles Decl. ¶ 8.)

On December 28, 2018, Dr. Rawles "performed an open reduction internal fixation of [Villarreal's] right distal radius fracture. This procedure was successful, with no complications." (*Id.* ¶ 9.) In the ensuing months, Villarreal was returned to OrthoVirginia on multiple occasions for follow-up appointments and therapy. (ECF No. 42–1, at 18–51.)

> After [Villarreal] returned to OrthoVirginia for his post-surgical follow-ups on January 4 and February 1, 2020, he began occupational therapy for use of his right hand and wrist. [Dr. Rawles] continued to monitor [Villarreal's] progress while he underwent therapy. And, on March 18, 2020, [Dr. Rawles] determined that [Villarreal] no longer required occupational therapy based on his most recent x-rays, increased functionality, and decreased pain.

(Rawls Decl. ¶ 10.)

### B. OrthoVirginia's Policies[6]

Dr. Rawles swears that:

> OrthoVirginia's goal has always been to optimize the musculoskeletal outcomes for all patients under their individual circumstances.
> As a matter of practice, this goal is no different for inmates, even though their circumstances may diverge substantially from those of the general public. For example, in cooperation with the administrators at NCC, we schedule inmate

---

[6] In his Complaint, Villarreal alleged that "OrthoVirginia has a different standard of care for patients who are prisoners." (Compl. 8.) Villarreal contends that OrthoVirginia has a policy of "indifference" to its patients who are prisoners. (*Id.*)

5

appointments with prison personnel, whereas patients drawn from the public can schedule their own appointments. Also, certain rehabilitation exercises may be tailored to the security limitations on inmates that arise from the policies at NCC. Ortho Virginia's practice has been to make reasonable adjustments based on these circumstances in order to deliver the best outcomes for its incarcerated patients. This practice was in effect during the relevant times of this action.

(Rawles Decl. ¶¶ 13, 14 (paragraph numbers omitted).) Consistent with this practice, Dr. Rawles swears that he never denied Villarreal any care that he believed was necessary to address Villarreal's wrist fracture. (*Id.* ¶ 15.)

### C. Villarreal's Failure to Provide Certification

By letter dated January 27, 2020, defendant OrthoVirginia requested that Villarreal "provide written affirmation that the necessary certifying expert opinion was obtained at the time of service of the Complaint" as required by section 8.01–20.1 of the Code of Virginia. (ECF No. 42–4, 2.) Villarreal did not respond to this request. (ECF No. 42, at 8.)

### III. Analysis

The Court will grant summary judgment to OrthoVirginia on Claim Four (a) because Villareal does not demonstrate that any OrthoVirginia employee acted with deliberate indifference to his wrist injury. The Court will also grant summary judgment to OrthoVirginia on Claim Four (b) because Villareal has not satisfied the procedural requirements of the Virginia Medical Malpractice Act or otherwise shown that his case does not require expert certification pursuant to that Act.

### A. Eighth Amendment Claim

To survive a motion for summary judgment on an Eighth Amendment claim, a plaintiff must demonstrate: (1) that objectively the deprivation suffered or harm inflicted was "'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008) (citing *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).

The subjective prong of an Eighth Amendment claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm. . . . [and] that the official in question subjectively recognized that his or her actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

When Congress enacted 42 U.S.C. § 1983, it did not intend to impose liability upon a corporation every time one of its employees violated a person's constitutional rights. *See Burton v. Youth Servs. Int'l, Inc.*, 176 F.R.D. 517, 520 (D. Md. 1997) (citations omitted). Rather, a private corporation, such as OrthoVirginia, "is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). A policy or custom for which a [corporation] may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or, (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (second alteration in original) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)). Additionally, "at the summary judgment stage, a Section 1983 plaintiff must offer sufficient evidence to support a finding that an 'affirmative causal link' exists between the alleged custom or policy and the complained of injury." *Brown v. Mitchell*, 327 F. Supp. 2d 615, 636 (E.D. Va. 2004) (quoting *Carter*, 164 F.3d at 221).

8

Villarreal fails to demonstrate that any employee of OrthoVirginia acted with deliberate indifference to his wrist injury. Indeed, the evidence before the Court reveals that OrthoVirginia, through its employees, provided medically reasonable care for Villarreal's wrist injury. More to the point, there is no evidence that any official policy or custom of OrthoVirginia resulted in a deprivation of Villarreal's Eighth Amendment right to constitutionally adequate medical care. *See Austin*, 195 F.3d at 728 (citing cases). Accordingly, Claim Four (a) will be DISMISSED.

### B. Negligence, Medical Malpractice

The Virginia Medical Malpractice Act ("VMMA") governs Villarreal's assertion about the negligent provision of medical care in Claim Four (b). *Zupko v. United States*, No. 3:18CV493, 2020 WL 6064955, at *14 (E.D. Va. Oct. 14, 2020) (citations omitted), *aff'd*, 837 F. App'x 236 (4th Cir. 2021). The VMMA requires that, prior to serving the defendant, a party alleging medical malpractice must obtain an expert certification of merit indicating that the defendant "deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed." Va. Code Ann. § 8.01–20.1.[7] Virginia defines malpractice as

---

[7] Specifically, Va. Code Ann. § 8.01–20.1 states as follows:

> Every motion for judgment, counter claim, or third party claim in a medical malpractice action, at the time the plaintiff requests service of process upon a defendant . . . shall be deemed a certification that the plaintiff has obtained from an expert witness . . . a written opinion signed by the expert witness that, based upon a reasonable understanding of the facts, the defendant . . . deviated from the applicable standard of care and the deviation was a proximate cause of the injuries claimed. . . .
>
> . . . .
>
> Upon written request of any defendant, the plaintiff shall, within 10 business days after receipt of such request, provide the defendant with a certification form that affirms that the plaintiff had obtained the necessary certifying expert opinion at the time service was requested or affirms that the plaintiff did not need to obtain a certifying expert witness opinion. If the plaintiff did not obtain a necessary certifying expert opinion at the time the plaintiff

9

follows: "'Malpractice' *means any tort action or breach of contract action for personal injuries or wrongful death, based on health care or professional services rendered*, or which should have been rendered, by a health care provider, to a patient." Va. Code Ann. § 8.01–581.1 (emphasis added).

If a plaintiff fails to obtain a necessary certifying expert opinion at the time the plaintiff requested service, "the court shall impose sanctions . . . and may dismiss the case with prejudice." Va. Code Ann. § 8.01–20.1; *see Parker v. United States*, 475 F. Supp. 2d 594, 596–97 (E.D. Va. 2007) (citations omitted). The VMMA provides a limited exception to the certification requirement where expert certification is excused "if the plaintiff, in good faith, alleges a medical malpractice action that asserts a theory of liability where expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience." Va. Code Ann. § 8.01–20.1. This exception "applies only in 'rare instances' because only rarely do the alleged acts of medical negligence fall within the range of a jury's or factfinder's common knowledge and experience." *Parker*, 475 F. Supp. 2d at 597 (footnotes omitted) (quoting *Beverly Enter.-Va., Inc. v. Nichols*, 441 S.E.2d 1, 3 (Va. 1994)); *see Keitz v. Unnamed Sponsors of Cocaine Research Study*, 510 F. App'x 254, 255–56 (4th Cir. 2013); *James v. United States*, 143 F. Supp. 3d 392, 396 (E.D. Va. 2015) ("The exception to the certificate of merit requirement applies only in rare circumstances, such as when a foreign object is left in a patient's body." (citing *Easterling v. Walton*, 156 S.E.2d 787, 790–91 (Va. 1967))).

---

        requested service of process on a defendant as required under this section, the court shall impose sanctions . . . and may dismiss the case with prejudice.

*Id.*

10

Here, Villarreal failed to respond to OrthoVirginia's request for expert certification. Further, Villarreal fails to "establish that this case is one of those 'rare instances' where the alleged acts of medical negligence fall within a factfinder's common knowledge and experience." *Parker*, 475 F. Supp. 2d at 597. Specifically, Villarreal fails to demonstrate that it would fall within a factfinder's common knowledge that the splinting, casting, and subsequent surgery of his wrist "deviated from the applicable standard of care, and that [any] delay was the proximate cause of his allegedly permanent damage." *Bond*, 2008 WL 4774004, at *3. Accordingly, Claim Four (b) will be DISMISSED.

### IV. Conclusion

The Motion to Reinstate (ECF No. 52) will be DENIED. The Motion for Summary Judgment (ECF No. 41) will be GRANTED. Villareal also requests injunctive relief for "preventing retaliation." (Compl. 5.) Villareal fails to demonstrate that OrthoVirginia or any defendant has or will retaliate against him. Accordingly, no action will be taken on this request for relief. Claims Four (a) and Four (b) will be DISMISSED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: 6/30/2021
Richmond, Virginia